### DUDLEY, ESTATE OF, In Re
### OLIVER, ESTATE OF, In Re

Ohio Probate Court, Cuyahoga Co

Nos 236083 & 240029.

Miller, Daus & Schwengler, Cleveland, for executor of estate of Albert E. Dudley.

Griswald, Green, Palmer & Kapp, Cleveland, for petitioner.

Edwin I. Fertman, Cleveland, for administrator of Jesse Oliver.

John R. Baylor, for petitioner.

### OPINION

By BREWER, J.

The petitioners in both the estate of Albert E. Dudley and the estate of Jesse Oliver are asking for reinstatement of claims not filed within four months as provided by §10509-134 GC.

In the Dudley case, The National City Bank received—in the Guardian Retirement Trust Fund from the Guardian Trust Company of Cleveland, Ohio, which is in liquidation—some 450 mortgages among which was a note and mortgage in which Albert E. Dudley, the decedent, was one in a line of owners of a certain piece of property. In October, 1923, Albert E. Dudley, assumed, and agreed to pay, the aforesaid mortgage. In July 1929 the decedent, Albert E. Dudley, transferred the premises, subject to the mortgage, to Jennie V. Frazier, the present owner, and she assumed and agreed to pay the aforesaid mortgage. None of the parties in the chain of title was ever released from his obligation on his respective assumption and agreement to pay said mortgage. In July 1936 the National City Bank instituted foreclosure proceedings on this mortgage and received from the Land Title Guarantee and Trust Company its preliminary foreclosure report which contained, among other things, information relating to the parties in the chain of title. Action was commenced on September 25, 1936, and all persons, including Albert E. Dudley, deceased, were made parties defendant. On October 2, 1936 the attorneys for the National City Bank were notified that the defendant, Albert E. Dudley, was deceased. The attorneys for the petitioner filed, on November 1, 1936, an application in the Probate Court for reinstatement of a barred claim. Appointment of Robert W. Dudley

by the Probate Court as executor of the will of Albert E. Dudley was made on October 3, 1935.

In the Oliver case the administrator, Edwin I. Fertman, was appointed on January 13, 1936. The petitioner is the alleged wife of the decedent. The United States Veteran's Bureau refused to pay her the monthly pension, to which a veteran's wife is entitled, until satisfactory proof of the marriage relationship was established. However, by an agreed statement of fact it was stipulated that the allegation of marriage should not be considered. The decedent was adjudged insane in 1926, and thereafter became an inmate of Lima State Hospital, Lima, Ohio. The petitioner further alleged that she wrote the said hospital in April 1934 and received a communication as to the condition of the deceased. She further alleged that she became severely ill in 1935 and in February 1936 was in Charity Hospital. On her return home she was bed-ridden until May 1936. During the month of August 1936 the petitioner inquired as to the decedent's condition at the Veteran's Bureau in Cleveland, Ohio, and was informed for the first time that Jesse Oliver had died on January 11, 1936. Prior to the filing of this application a final account had been filed showing distribution.

The court discusses both these cases in one opinion because, although their circumstances are greatly diverse, both petitioners ask to have their claims reinstated under §10509-134 GC solely on account of the lack of knowledge of the death of the decedent. Therefore, this court has but one question to decide: Is the allegation of the lack of knowledge of the death of the decedent, in itself, a sufficient ground to reinstate a barred claim and to hold the creditor not guilty of culpable neglect, as provided in §10509-134 GC?

By a recent decision of the Supreme Court of Ohio (Beach v Mizner, 131 Oh St 481) §10509-112 GC was held to be a statute of limitations and not one of preference. Consequently those creditors who have failed to file their claims within the statutory period of four months, excluding executor or administrator, must proceed under §10509-134 GC to have their claims reinstated. This section provides:

"Upon petition filed by a creditor or person deriving title from him, whose claim has not been presented within the time prescribed by law, the Probate Court, if after notice to all interested parties and hearing, it is of the opinion that justice and equity so require, and that the petitioner is not chargeable with culpable neglect in failing to present his claim within the time so prescribed, may permit petitioner to file his claim for allowance, but such allowance shall not affect any payment or distribution made before the filing of such claim, nor shall it prejudice the rights of creditors whose claims were filed within the time prescribed by law."

In enacting this section the legislature used the words "culpable neglect." It did not define the term, and consequently left the door open to many diverse constructions of the words. First, what in one county, because of its small size, might be considered as "culpable neglect," might not in another county on account of its greater size, be so considered. Second, what to one judge might be "culpable neglect" to another would not be "culpable neglect." In other words, we shall have even greater difficulty in trying to define, "culpable neglect," than the courts have had in defining, "contributory negligence." Greater by far is the problem of the Probate Court judges because there are no juries upon whose verdicts they can depend.

In the case at bar the court is confronted with this problem: Should a Probate Judge hold in one case that the lack of knowledge of death under one set of circumstances makes a creditor guilty of "culpable neglect," and in another case, under a different set of circumstances, innocent of "culpable neglect?" If so, this court can readily see that the future will bring numerous cases with such varying circumstances as to make it highly improbable that this or any other court will be able to create a distinct line of demarcation between what should and what should not be termed "culpable neglect."

The problem is not found in Ohio alone. The courts of Massachusetts, Minnesota and numerous other states are faced with the same difficulty. Under the statutes of other states such words, as, "if not barred by laches," "except for good cause shown," "who by reason of accident, mistake or unforseen cause, or peculiar circumstances," are used in place of our words "culpable neglect." The difficulties that lie in the way of a solution of this problem are well brought out in an article which appears in 21 Iowa Law Review 152, in which the writer discusses the words "peculiar circumstances" as used in the barred claims statute of the State of Iowa, stating as follows:

"Under these rules of interpretation, the Iowa Supreme Court has denied relief in four out of five of the recent cases appealed to it. But its position is in line with the rulings in other jurisdictions under similar statutes, Haven v Smith, 250 Mass. 546, 146 NE 18 (1925); In re Golden, 120 .Nev. 226, 231 NW 833 (1930), and is explained, if at all by the desire to protect the basic purpose of the non-claim statute, which is to speed the closing of estates. * * * Nevertheless, the statute in its present form and under the interpretation given it by the courts has occasioned much fruitless litigation and the serious question is raised of whether it would not be better to provide for the barring of all claims, regardless of hardship, upon the expiration of a fixed statutory period. The only alternative is a more specifically detailed statute."

Reported cases in Ohio to date are of little benefit to this court in the matter at bar. In re Felicia Capoziella, 6 O.O. 469, Probate Judge Lamneck held that the claimant was guilty of culpable neglect in failing to present his claim if he knew of the decedent's death, lived in the same city where the decedent died, and the appointment was advertised in a newspaper published in the same city. In Schindler v Schindler, 50 Oh Ap 517, (19 Abs 63):

"One who holds, as payee, the notes of a decedent, and through mistake of fact and law accepts in payment thereof a note executed under mistaken authority by decedent's executrix, by the terms of decedent's will, holds only a life estate, and as a result thereof does not present his claim within the statutory time, is not chargeable with culpable neglect in failing to present his claim within the time so prescribed, and is entitled to have his claim reinstated under the provisions of §10509-134 GC."

In Cribbs v Sturman, 32 O.N.P. Rep. 29, 31, the court defines culpable neglect as "such neglect in enforcing one's own rights as can fairly be ascribed to carelessness, improvidence, or folly." In Re Estate of Grube, 21 O. L. Abs 1, the court held that §10509-134 GC does not confer upon the Probate Court the authority to permit an executor or administrator who has not presented his claim within three months after his appointment then to present the same to Probate Court for reinstatement.

Should lack of knowledge of the death of the decedent under any circumstances be considered proper grounds to reinstate a barred claim, the force of the effect of §10509-112 GC would only pertain to and benefit estates where actual proof could be shown that the creditor had actual knowledge. In fact, the burden of proof would then shift from the creditor by his mere statement that he had no knowledge of death, and make it mandatory that the fiduciary prove the claimant did have knowledge of the death. This would necessitate endless controversy as to questions solely of fact.

We find a number of limitation statutes in the General Code which bar suit and force the claimants to file their actions within definite periods of time. (See §§11225, 11222, 11224-1 and 8752, GC, etc.) Such statutes are also common in the Probate Code. §10504-32 GC provides for the time in which a will contest case must be commenced. §10512-3 GC provides when actions to set aside ante-nuptial or separation agreements must be begun, etc. §10509-133 GC provides that an action on a rejected claim is barred unless filed within two months and is held to be a definite limitation statute in Fulton v Bremer, 130 Oh St 227. However, the legislators, in enacting this statute, felt that they should not create a law as rigid and inflexible as other barring statutes, and inserted the words "culpable neglect."

This Court has carefully checked into the ably prepared briefs of all the attorneys to these suits and is familiar with the laws and the cases cited. It is proper to note, however, that there are no cases on all fours in Ohio with the case at bar; nor is there any definition of "culpable neglect" which is adequate enough to make it possible to distinguish and properly comprehend the meaning of these words. It is further proper to note that different states under practically the same set of circumstances have been at odds. In fact, courts of the same state, under similar circumstances, have disagreed as to the meaning of "culpable neglect" and similar phrases. (See entire article. 21 Iowa Law Review 152).

In the Dudley case we have as the claimant a large banking institution comprising numerous departments. The Court can readily see that through no actual neglect many small details might be overlooked. The evidence shows that this bank has a legal department; that it receives a copy of the Daily Legal News; that the publication of the appointment of the administrator in this case was duly published in the Daily Legal News. However, it is also

shown that at the time of this publication, suit for foreclosure had not yet been commenced.

In re Estate of Jesse Oliver, the claimant is a woman ignorant of the law, who alleges that she had no knowledge of the death of the decedent. This applicant's prayer for relief should be denied, however, without other intervening circumstances solely on the ground of the statutory provision contained in §10509-134 GC, which declares that, "such allowance shall not affect any payment or distribution made before the filing of such claim." As heretofore stated, a final account and report of distribution had been filed, although not approved, prior to the filing of this claim.

In both oral argument and by brief filed, the question was asked why the court should not reinstate claims as long as assets remain in the estate with which such claims can be paid. The time within which an estate can be finally adjudicated in a Probate Court is most uncertain. Some estates remain unsettled because of their complexity for many years, while the administration of others is of a short duration. To show the inequity of such a ruling, let me cite a hypothetical case.

"A" dies intestate, and leaves $100,000 in stocks, cash and bonds. The administrator waits four months, pays all claims presented within that period, files his account, and makes distribution. The concluding sentence of §10509-112 GC reads:

"any such late claim shall not prevail as against bona fide distributees."

**Sec 10509-170 GC** provides:

"within nine months after his appointment every executor or administrator shall render an account of his administration."

Could not the administrator make distribution and file his account at the end of the four months and one day?

"B" dies intestate, leaving $100,000 in judgments, mortgages and other property, and it takes a considerably longer time to liquidate the assets and settle the estate. If claims could be presented at any time, as long as assets remain in the estate, the creditors would have a longer time in which to present their claims in "A's" estate than in "B's."

We would then have creditors having greater rights in one estate than in another. Certainly there would be no equity in any such ruling. Creditor rights should remain the same regardless of the nature of the assets in the estate.

Solvency of an estate will not alone entitle claimant to equitable relief for negligent failure to file claim within time. Simpson v Burnham, 229 NW 679 (Iowa).

Insufficient assets is no excuse for a creditor in failing to present his claim against an estate. In re LeSuer v Quillian, 228 NW 380 (S. D.)

The Supreme Court has definitely fixed the time limit at four months, and no claim can be presented and allowed after that period unless it is reinstated and the court finds that "justice and equity" require that the claim be reinstated, "and that the petitioner is not chargeable with culpable neglect in failing to present his claim within the time so prescribed."

There should be, and there is, a definite time limit within which claims against estates must be presented. If this rule did not prevail, the settlement of estates would be indefinitely delayed.

This Court is then faced with the problem of a statute which is declared to be a statute of limitations, with a limitation—culpable neglect.

Due to the number of cases filed in this court to reinstate claims, and due to the variety of excuses presented, it would be most advantageous if some definite interpretation of these words were had, rather than to refuse or grant the application to reinstate a claim in each case. It is for this reason that this court, after a careful check of the laws of both this state and other states, believes that a creditor, in order to be entitled to the relief asked for in the petition to reinstate barred claims, must plead one of the following allegations:

First: That the claimant was under "legal disability," as provided by §10512-2 GC.

"The term 'legal disability' as used in this act shall include the following: (a) persons under the age of twenty-one years; (b) persons of unsound mind; (c) persons in captivity; (d) persons under guardianship of the person and estate or either."

Second: that the creditor was absent from the state for the greater portion of the four months period immediately following the appointment of the executor or administrator, and had no notice of the

death of the debtor or the appointment of a fiduciary. This would be in conformity with the statutory or legal interpretation given by other states as a proper excuse. (See Idaho, Indiana, Kansas, Montana, Oklahoma, Wyoming, and Canal Zone).

Third: that the claimant's rights had been prejudiced by fraud or misrepresentation occasioned by the conduct of the executor or administrator. Equity would require such a rule. Due to the confidential relationship which often exists between the claimant and the executor or administrator, misrepresentation or fraud would work unnecessary hardship upon the creditor who relies upon the good faith of the fiduciary. It might tend to induce the executor or administrator to perpetrate constructive or actual fraud to the dire distress of the claimant.

However, some courts have even held that the grounds for the relief stated above, are insufficient to reinstate barred claims, either because the statute did not permit the granting of such relief or because the courts at their discretion did not believe that equity and justice would require their reinstatement. In Rowell v Patterson, 76 Maine 196, the court held, reading from the syllabus:

"The limitations of the statute, 1872 c. 85, for presenting claims against an estate to the administrator, and bringing an action thereon, apply to claims held by an insane person, though such person has no guardian during the two years next after the notice of the appointment of the administrator."

In Sykes v Meacham, 103 Mass. 285, the court held that a creditor cannot maintain a bill in equity against the administrator of his debtor to recover a debt barred on the ground that he is an alien in a foreign country and never knew of the death of the decedent nor of the appointment of the administrator until the time for presenting the claim had lapsed. The court stated in its opinion:

"It is hardly necessary to consider the question whether the phrase 'culpable neglect,' as used in the statute, means anything more than 'gross neglect,' or failure to make 'reasonable inquiry.' It is sufficient that the plaintiff does not present a case in which, 'justice and equity,' in any sense which a court of chancery can give to these words, require that judgment should be rendered in favor of this claim."

In Taylor v Jackson, 213 Iowa 844, the creditor's reliance upon indefinite statements of the administrator as to the time within which the claim may be filed were not "peculiar circumstances," which entitle claimant to equitable relief.

However, this Court feels that "justice and equity" can not best be served if these cases are to be followed. The Court would rather follow such cases as Holway v Ames, 100 Me. 208, in which the court held that under a statute authorizing equitable relief at the suit of a creditor whose claim has not been presented within the nonclaim statutory period, where the court is of the "opinion that justice and equity require it," and that the creditor is not chargeable with culpable neglect, the agreement of an administrator to include and pay an account is sufficient to excuse delay in filing the same. And in Smallwood v O'Bryan, Sup. Ct. (Iowa), 225 NW Re. 848, the Court held that an assignee for benefit of creditors of bank establishing that bank's failure to file claim against the estate within twelve months, was because of reliance on the executor's promise of payment, held to have established "peculiar circumstances" sufficient to prevent the operation of the statutory bar and entitle him to relief as against belated filing of claim, where no injury could result to creditors or others by allowance of the claim. In Brayley v Ross, 33 Iowa 505, under a statute providing that claims against an estate, if not filed within a specified period, are forever barred unless pending in court, or "unless peculiar circumstances entitled the claimant to equitable relief," it was held that it would be inequitable to defeat a claim because of delays which were in fact indulgences to the personal representative, granted at his special request.

Also in Hamilton v Wright, 27 Ky. L. Rep. 1144, the court held that where an executor prevented reference of a settlement suit to a commissioner by affidavits showing that a delay would be beneficial, assured the claimant that his claim would be paid in full, and requested him not to sue, thereby preventing the filing of the claim within the statutory period, it was held that the executor was estopped to set up the statute of nonclaim as a ground of forfeiture of right in interest.

Sec 10509-112 GC was enacted to expedite the administration of estates. Therefore, if a Probate Court is not strict in construing what should be deemed culpable neglect, the force of §10509-112 GC would be greatly diminished, and fiduciaries would not have equal protection.

This Court believes that to adequately protect all persons concerned in an application to reinstate a barred claim, it should be necessary for the claimant to allege in his petition for reinstatement and prove: First, that the claimant was under legal disability; Second, that the claimant was absent from the state for the greater portion of the four months period immediately following the appointment of the executor or administrator and had no notice of the appointment of a fiduciary; Third, that the claimant's rights have been prejudiced by fraud or misrepresentation occasioned by the conduct of the fiduciary.

This Court believes there should be but one exception to this rule. Where an application for the reinstatement of a barred claim, as provided by §10509-134 GC, is accompanied by the written consent of all interested parties, including creditors and beneficiaries of the estate, such a claim should be reinstated.

The applications to reinstate barred claims in re Estate of Albert E. Dudley, and in re Estate of Jesse Oliver, are refused.